**Darrell PERRY, Appellant/Cross-Appellee,**

v.

**COMMONWEALTH of Kentucky, Appellee/Cross-Appellant.**

**Nos. 91–SC–93–MR, 91–SC–102–MR.**

Supreme Court of Kentucky.

Sept. 24, 1992.

---

G. Thomas Mercer, Appellate Public Advocate, Louisville, for appellant/cross-appellee.

Chris Gorman, Atty. Gen., Gregory C. Fuchs, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee/cross-appellant.

SPAIN, Justice.

Darrell Perry appeals as a matter of right his conviction of attempted murder, first-degree burglary, and theft by unlawful taking by a Warren County jury. The trial court sentenced Perry to twenty years' imprisonment on the attempted murder conviction and ten years on the burglary conviction, to be served consecutively for a total sentence of thirty years. An additional one-year sentence entered on the theft conviction was ordered to be served concurrently with the two felony convictions. The jury also found Perry guilty of first-degree assault as to another victim and fixed punishment at twenty years to run concurrently, but this conviction was subsequently vacated by the trial court and a new trial was ordered. The Commonwealth has appealed from this order.

Daviess County Sheriff's Deputy David Osborne testified that on May 27, 1989, he had served a restraining order on Perry at his marital residence in Utica, Kentucky. The restraining order was obtained by Perry's stepdaughter, by her power of attorney for Perry's bedridden wife. The order required Perry to vacate the home. After Perry removed some personal effects from the home, Deputy Osborne and Perry left the house and walked to their respective automobiles. As Osborne turned to leave, Perry fired five shots at him with a .38 caliber revolver. Four of the shots hit

Osborne, one shot entering his back and severing his spine. Perry then "straddled" Osborne, pointed a gun at Osborne's forehead, and pulled the trigger. When the gun snapped without firing, Perry began to hit Osborne about the head, first with Perry's revolver, and then with Osborne's pistol. When Perry finally stopped, he stuffed the restraining order in Osborne's mouth and left in the deputy's cruiser, taking Osborne's pistol and portable radio. Perry attempted to back the car over the seriously wounded Osborne before leaving the scene, but Osborne managed to pull his body out of the path of the car.

Perry threw away the deputy's pistol as he drove to his business where he picked up more ammunition, a second pistol, and his van. He abandoned the deputy's car and then drove his van to a residence where his bedridden wife was located. Perry entered the home through an unlocked door where he encountered his step-grandson, Marty Hayden. Perry pointed a pistol at Hayden's head and asked whether his wife was there. Hayden lied and attempted to push the pistol away. During the struggle, Hayden was seriously wounded when Perry shot him in the stomach. Perry then stood over Hayden and placed the weapons to Hayden's face and said, "I'll let you live this time."

Perry left the Hayden residence and fled to Florida, where he threw away his firearms and shaved off his beard. Four days later, Perry returned to Kentucky where he surrendered to the police. There was no dispute at trial by the parties as to whether the victims were "seriously injured."

A four-count indictment was returned by the Daviess County grand jury charging Perry with two counts of attempted murder of Osborne and Hayden, one count of first-degree burglary, and one count of first-degree robbery. Venue was changed from Daviess County to Warren County. The jury convicted Perry of attempted murder of Deputy Osborne, the included first-degree assault of Hayden, one count of first-degree burglary, and the lesser-included charge of theft by unlawful taking. The trial court subsequently entered an order granting a new trial on the Hayden assault conviction but denied all other motions to set aside the verdict or grant a new trial.

Perry raises two allegations of error on his direct appeal while the Commonwealth has appealed from the order of the trial court which granted a Perry a new trial on the first-degree assault conviction.

█ Perry first argues that the trial court erred when it denied his motion for a directed verdict on the charge of attempted murder. Though he admitted in a statement to the police that he had shot Osborne and Hayden, Perry claimed that he had acted under extreme emotional disturbance. In the instructions to the jury, the trial court separately instructed on assault under extreme emotional disturbance, and included the defense as a negative element of the attempted murder instructions. The trial court further defined extreme emotional disturbance in a separate instruction.

The standard for deciding whether the trial court erred in denying a motion for directed verdict is found in *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991), wherein we stated:

On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

We have reviewed the record, including the testimony of Perry and his two medical expert witnesses, and find that the trial court correctly denied Perry's motion for a

directed verdict. The trial court properly found that the evidence presented was sufficient to support a separate instruction on extreme emotional disturbance, but was cumulatively deficient to have allowed the granting of a directed verdict motion. Taking the evidence as a whole, it was not clearly unreasonable for a jury to find Perry guilty of attempted murder of Osborne, notwithstanding his claim of extreme emotional disturbance. *Benham, supra.* The trial court did not abuse its discretion.

■ Perry's second and final claim of error is that the trial court improperly granted the Commonwealth's motion *in limine* which restricted defense counsel from presenting evidence as to the propriety of the restraining order served on Perry. The trial court held that this evidence was irrelevant to Perry's state of mind because he had not looked into the validity or invalidity of the order at the time of the incidents.

We do not believe that the trial court abused its discretion in preventing this testimony which it believed to have no bearing on the issue of Perry's state of mind at the time of the shooting. Perry failed to prove to the satisfaction of the trial court that he had any knowledge that the restraining order served was substantively or procedurally defective at the time of the two shootings. Thus, the proffered evidence would not have rendered the contended fact of extreme emotional disturbance more or less probable than it would be without it. *Davis v. Commonwealth*, Ky., 555 S.W.2d 575 (1977); Lawson, *The Kentucky Evidence Law Handbook*, 2d Ed., Section 2.00(B).

■ The Commonwealth has cross-appealed the order of the trial court which granted Perry's motion for a new trial as a result of an allegedly improper instruction on first-degree assault. Perry had been charged in the indictment with the attempted murder of Hayden "when the defendant intentionally took a substantial step in a course of conduct planned to culminate in the commission of the crime of murder when, with intent to cause the death of Marty Hayden, he shot Hayden with a firearm...." The indictment did not specifically charge Perry with first-degree assault. In each set of instructions given to the jury, the trial court instructed on attempted murder, attempted first-degree manslaughter, and included instructions on first-degree assault, second-degree assault, and assault under extreme emotional disturbance. The Osborne instructions also contained an instruction on third-degree assault. In each case, the first-degree assault instructions included a provision which permitted the jury to find Perry guilty of first-degree assault if they could not find him guilty of either attempted murder or attempted manslaughter.

The Commonwealth argues that *Luttrell v. Commonwealth*, Ky., 554 S.W.2d 75 (1977), by implication, allows an instruction on first-degree assault as a lesser-included offense of attempted murder where the evidence is sufficient to show "serious physical injury." In that case, the defendants were charged in the indictment with the attempted murder of a police officer. The defendants were also indicted for second-degree assault. We stated at page 78 that:

> [i]f the defendants shot Robert Phillips in an attempt to kill him they caused him physical injury and used a deadly weapon. One cannot be shot in an attempt to kill without being physically injured or without use of a deadly weapon. Consequently, proof of the facts charged in the indictment establish the commission of both offenses. Under these circumstances assault in the second degree is a lesser included offense because it is established by proof of the same or less than all the facts required to establish the commission of attempted murder only in respect that a lesser kind of culpability suffices to establish its commission.

We went on to say that:

> [a]t a new trial an instruction on assault in the first degree need not be given because the evidence is not sufficient to support a conviction of that offense. The elements of assault in the first degree are the same as those of assault in

the second degree except that serious physical injury must result. KRS 508.-010(1)(a).

*Id.*, at 78–79.

Perry disagrees and argues that his conviction under the first-degree assault instruction included "... elements of a distinct criminal offense from that for which the appellant was indicted ...," *Morris v. Commonwealth*, Ky.App., 783 S.W.2d 889, 890 (1990). Perry argues that *Luttrell* can be distinguished because the defendants in that case were indicted for both attempted murder and second-degree assault, while he was indicted for attempted murder but not first-degree assault. In arguing that first-degree assault is not a lesser-included offense of attempted murder, Perry cites Section 12 of our state constitution, which prevents the Commonwealth from prosecuting and obtaining a criminal conviction on a felony charge unless the defendant has first been indicted therefor. His argument would require this Court to follow a strict statutory "elements" approach. This approach looks to the elements of the main and lesser crimes as set out by the applicable statutes, rather than to look to the charge or the evidence. It is applied in a minority of courts and has been criticized as "inherently inflexible." *State v. Jeffries*, 430 N.W.2d 728, 730 (Iowa 1988), citing Blair, *Constitutional Limitations on the Lesser–Included Offense Doctrine*, 21 Am.Crim.L.Rev. 445, 447 (1984). The approach can best be summarized by the case of *United States v. Eisenberg*, 469 F.2d 156, 162 (8th Cir.1972), which was argued by defense counsel to the trial court, and wherein the federal court stated:

> Instructions as to lesser-included offenses are required in certain circumstances. *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). However, the instruction is not proper unless it is impossible to commit the greater without first committing the lesser, for otherwise the lesser is not properly a lesser offense to greater. [Citation omitted.] Here, the instruction was not required because the greater was an attempt charge, while the lesser required the completed act. Thus, the greater could be committed by proof of less than was required for the lesser, the completed act not being essential to the proof of the greater.

*See also Government of the Virgin Islands v. Smith*, 558 F.2d 691, 696 (3rd Cir.V.I.1977), *cert. denied*, 434 U.S. 957, 98 S.Ct. 486, 54 L.Ed.2d 316 (1977); *State v. Zdiarstek*, 53 Wis.2d 776, 785–86, 193 N.W.2d 833, 838 (1972).

When determining whether a charge is an included or lesser-included offense, we are required to examine KRS 505.020(2), which governs whether "[a] defendant may be convicted of an offense that is included in any offense with which he is formally charged." This statute, which codifies the Model Penal Code approach and which was applied by this Court in *Luttrell*, states that an offense is included when:

> (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

> (b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

> (c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission; or

> (d) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest suffices to establish its commission.

Applying the statute to the facts of this case, we find that KRS 505.020(2)(a) is applicable since the crime of first-degree assault may be "established by proof of the same or less than all facts required to establish the commission of attempted murder."

KRS 508.010(1)(a) states that a person is guilty of first degree assault when he "intentionally causes serious physical injury to another person by means of a deadly weapon or dangerous instrument." Serious physical injury is defined by KRS 500.-080(15) to be physical injury which creates a substantial risk of death, or which causes

serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ. A person is guilty of attempted murder when, with the intent to kill someone, he takes a substantial step toward killing him. KRS 506.010(1)(b); KRS 507.020. Assault in the first degree requires a state of mind, an act and a result, "serious" physical injury. Attempted murder requires only a state of mind and an act, but does not require any injury.

First-degree assault can be an included offense of attempted murder if the missing element which prevents the murder from being consummated is not a necessary element of first-degree assault. For example, assume the defendant shot the victim with a pistol resulting in serious physical injury but not death. If the jury believes that the defendant intended to kill the victim, he can be convicted of attempted murder. If on the other hand, they believe that he did not intend death but only intended to injure the victim, he could be convicted of first-degree assault. "Serious physical injury" resulted to Hayden when he was shot by Perry, thus meeting the requisite elements of first-degree assault. There can be no argument that once a defendant has caused "serious physical injury" to a victim, that he has not satisfied the "substantial step" element of attempted murder. The Commonwealth is then required to prove that the intent of the defendant was to kill the victim and not just to cause "serious physical injury."

The circumstances in this case warranted an instruction on first-degree assault as an alternative verdict to attempted murder. The trial court properly included the instruction since Perry did not dispute that "serious physical injury" resulted from the gunshot wound to Hayden. The only element in this case which separated a conviction for attempted murder from first-degree assault was the mental state of Perry at the time of the incidents. The decision then to convict Perry of attempted murder or first-degree assault turned on whether the jury believed that the Commonwealth had presented sufficient evidence of Perry's mental state at the time of the inci-

dent. That is, did Perry actually intend to kill Hayden, or did he merely intend the consummated act of first-degree assault? From the verdicts given, we can conclude that the jury weighed the evidence and believed that Perry intended only to injure Hayden, in contrast to their decision that he indeed intended to kill Osborne.

The trial court properly concluded in this case that the evidence in the record supported a separate instruction on attempted murder, and an included instruction on first-degree assault. The law not only permits the court to give such an instruction, but requires the court to give instructions when they are "applicable to every state of [the] case covered by the indictment and deducible from or supported to any extent by the testimony." *Reed v. Com.*, Ky., 738 S.W.2d 818, 822 (1987) (Citation omitted.) "The determination of what issues to submit to the jury should be based upon the totality of the evidence." *Id.* We conclude by holding that, under the circumstances presented by the evidence in this case, the trial court correctly instructed the jury that they could find Perry guilty of first-degree assault if they did not believe that he intended to kill Hayden. The trial court's subsequent change of mind and decision to enter an order granting a new trial on the assault conviction was improvident and clearly erroneous.

The judgment of conviction and sentence for attempted murder of Osborne, the first-degree burglary and the theft entered by the Warren Circuit Court is affirmed. The order granting Perry a new trial on the first-degree assault conviction as to Hayden is hereby reversed and remanded to the trial court for further proceedings not inconsistent with this opinion.

All concur.