## Scott v. Commonwealth.

November 22, 1946.

354

A. W. Mann and P. H. Vincent for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

Darwin Scott and two companions were tried and convicted in the Catlettsburg Police Court on a warrant charging them with the unlawful possession of intoxicating beverages for purpose of sale in local option territory. They appealed to the Boyd Circuit Court. Upon their trial in the Boyd Circuit Court, the two codefendants were acquitted but Scott was convicted and his punishment fixed at a fine of $100 and confinement in jail for 30 days. From that judgment he files a motion in this court for the granting of an appeal.

Prior to the warrant and conviction in police court, the Chief of Police of Catlettsburg had searched the premises of Scott without a search warrant and had seized and taken possession of a considerable quantity of liquor. Scott was not put upon trial at that time and the Chief of Police was instructed by the City Attorney that the search was illegal and that the property seized should be returned to Scott. Acting under these instructions, the Chief of Police took the liquor back to Scott's house on February 8, 1946, and delivered it to him in the street, at which time Scott and a colored man working for him took possession of it, part of it being carried into the house by the colored man and a portion of it being taken into the house by Scott himself about one-half hour later that day. Shortly after delivering the liquor to Scott the Chief of Police obtanied a search warrant apparently basing the affidavit upon what had occurred with respect to the redelivery of the liquor. Pursuant to the search warrant the premises were then searched and the liquor again taken into possession. Scott was tried for possessing the liquor illegally for the purpose of sale and convicted as above stated.

Appellant contends that his motion should be sustained and that the judgment of the lower court should be reversed for the following reasons: First, the trial court should have quashed the search warrant because the affidavit for the search warrant is insufficient on its face, and second, that the act of the Chief of Police in returning the liquor to Scott and subsequently searching the house for the same liquor constitutes entrapment and should not be upheld.

In view of the fact that the judgment must be reversed for the reason set out below, it will be unnecessary to discuss the sufficiency or insufficiency of the affidavit for the search warrant.

The claim that the act of the Chief of Police constituted entrapment presents the serious question herein. It seems to be the general rule, and the courts are agreed, that the criminality of the act depends on whether the criminal intent originated in the mind of the accused or originated in the mind of the entrapping person. Where it originates in the mind of the accused, the fact that the opportunity is furnished constitutes no defense. The real test seems to be that he must participate in all the acts necessary to constitute the crime, and unless he does, he should not be convicted. See Annotated Cases, 18 A. L. R. 146. This liquor had been previously taken illegaly, that is, without search warrant. In order for Scott to get it back into his possession there must have been some act upon the part of the officer, no part of which the accused could participate in. To say that the accused and the officer acted together in initiating the act would be making the officer a party to a criminal act and thereby, charging him with criminal responsibility. The officer in no way had such thing in mind. It does appear, however, that he did have in mind the obtaining of evidence for the purpose of prosecution, and the evidence he was seeking was the liquor, which he himself, under direction of his superiors, placed in the hands of the accused. This is obvious from the following testimony:

"Q. 29. Now, Chief, when you took the whiskey up and delivered it to Mr. Scott, under orders from some of your superiors, for the reason it had been illegally seized in the first place, did you have in mind to get it back to

him and then grab him for having it in his possession? A. I was looking for evidence.

"Q. 30. Did you have that in mind? A. I was looking for evidence.

"Q. 31. Will you answer the question? Did you have that in mind? A. I said I was looking for evidence.

"Q. 32. You refuse to answer the question?

"Mr. Burchett: I think we will admit he had it in mind."

We believe such deportment on the part of the officer constitutes an entrapment and such that should relieve the defendant from guilt.

Wherefore, the judgment is reversed.